UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 07-10075-MLW |
| ) | |
| ) | VIOLATION: |
| v. ) | 18 U.S.C. § 2314 |
| ) | (Transportation of Stolen Goods) |
| ROBERT M. MARDIROSIAN, ) | 18 U.S.C. § 2315 |
| ) | (Possession of Stolen Goods) |
| Defendant. ) | 18 U.S.C. § 981 and 28 U.S.C. § 2461 |
| ) | (Forfeiture) |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

### General Allegations

1. At all times material to this Indictment, the defendant, Robert M. Mardirosian ("MARDIROSIAN"), was a resident of Massachusetts. From in or about the 1960's to the 1990's, MARDIROSIAN was licensed to practice law in the Commonwealth of Massachusetts, and maintained an office in Watertown, Massachusetts.

2. At times material to this Indictment, David Colvin was a resident of Massachusetts and, in or about 1978, a client of MARDIROSIAN.

3. At all times material to this Indictment, the International Art Loss Register ("ALR") was an organization based in London that maintained a database of information about stolen works of art that it utilized in providing consulting services to purveyors of art.

4. At times material to this Indictment, Michael Bakwin was a resident of Stockbridge, Massachusetts, and was the owner of seven highly-valuable impressionist paintings: *Bouilloire et Fruits* by Paul Cezanne; *Portrait d'une Jeune Fille* and *Portrait d'un Jeune Homme* by Chaim Soutine; *Maison Rouge* by Maurice Utrillo; *Flowers* by Maurice de Vlaminck; and *Woman Seated* and *Boy* by Jean Jansem (referred to collectively as "the Paintings").

5. At times material to this Indictment, Henri Klein was a friend of MARDIROSIAN and resided in or near Geneva, Switzerland.

6. Beginning in or about February 1999, Erie International Trading Company, Inc. ("Erie International") was a corporation established under the laws of the Republic of Panama, of which MARDIROSIAN was the sole owner.

7. At times material to this Indictment, Paul Palandjian was a Boston real estate developer and family friend of MARDIROSIAN.

8. At all times pertinent to this Indictment, Sotheby's Holdings, Inc. ("Sotheby's") was, among other things, an internationally-known auction house engaged in interstate and foreign commerce, including the sale of valuable works of art.

### Mardirosian's Receipt of the Stolen Paintings

9. In or about July 1978, Colvin appeared at MARDIROSIAN's office carrying a plastic bag which held the stolen Paintings. Colvin showed MARDIROSIAN the stolen Paintings and admitted to MARDIROSIAN that he had stolen them.

10. MARDIROSIAN advised Colvin not to sell the stolen Paintings.

11. After this discussion, MARDIROSIAN allowed Colvin to sleep in a storage area above a nearby office owned by MARDIROSIAN.

12. In or about February 1979, MARDIROSIAN learned that Colvin had been murdered.

## Mardirosian's Attempts to Sell The Stolen Paintings

13. Approximately a year after Colvin's death, MARDIROSIAN discovered the bag containing the Paintings in the storage space where Colvin had slept. At various times in or about 1979 to 1988, MARDIROSIAN attempted to profit from the stolen Paintings.

14. MARDIROSIAN attempted to determine whether he could obtain a reward or insurance payout if he returned the stolen Paintings to Bakwin.

15. After learning that no such reward or insurance payment would be made, in or about 1988, MARDIROSIAN shipped the stolen Paintings to Europe, where at various times between in or about 1988 to January 2005, he caused them to be stored at locations in or near Geneva, Switzerland.

16. At various times from in or about 1988 to 1999, MARDIROSIAN attempted to sell the stolen Paintings.

17. In or about January 1999, MARDIROSIAN learned that the ALR had made inquiries through his intermediary regarding Bakwin's Cezanne.

18. In February 1999, MARDIROSIAN established Erie International.

19. In or about August 1999, MARDIROSIAN directed Bernard Vischer, a Swiss attorney, to represent Erie International, as the purported holder of the stolen Paintings, in negotiations with the ALR regarding the return of the Paintings. During these negotiations, Vischer refused to identify the owner of Erie International.

20. At various times in 1999, through Vischer, MARDIROSIAN sought to sell the stolen Paintings to Bakwin, their rightful owner.

21. On or about October 25, 1999, in Geneva, Switzerland, MARDIROSIAN, through Vischer, caused Erie International to enter into an an agreement with Bakwin to turn over the

3

Cezanne to Bakwin, in exchange for title to the other six paintings, and on behalf of Bakwin, the ALR received the Cezanne.

22. At various times between 1999 and 2003, MARDIROSIAN attempted unsuccessfully to sell the six remaining stolen Paintings through various intermediaries.

23. In or about December 2003, MARDIROSIAN approached Paul Palandjian, at Palandjian's Boston office, and asked Palandjian to help him sell the six remaining stolen Paintings.

24. In Palandjian's office and in subsequent telephone calls, MARDIROSIAN told Palandjian that although the paintings had been stolen, title to them had subsequently been cleared.

25. MARDIROSIAN and Palandjian initially agreed that Palandjian would purchase the six remaining stolen Paintings outright and attempt to resell them for a profit.

26. In or about 2004, Palandjian inquired whether Sotheby's would be interested in selling the remaining six stolen Paintings and provide funding for Palandjian's acquisition of the paintings.

27. On or about January 10, 2005, with MARDIROSIAN's assent, Palandjian traveled to Geneva, Switzerland, where he took delivery of the remaining six stolen Paintings from Henri Klein.

28. On or about January 10, 2005, Palandjian brought the six remaining stolen Paintings to a bank in Geneva, for inspection by a Sotheby's representative.

29. When the inspection was complete, Palandjian, with MARDIROSIAN's assent, arranged to store the six remaining stolen Paintings in the bank's vault.

30. In or about January 2005, Sotheby's notified Palandjian that it was interested in selling four of the six stolen paintings, namely the two Soutines, the Vlaminck and the Utrillo, but was not willing to fund their purchase from MARDIROSIAN.

31. Upon learning that Sotheby's would not finance Palandjian's acquisition of the paintings, MARDIROSIAN agreed instead to authorize Palandjian to serve as MARDIROSIAN's agent in arranging for the sale of the four stolen Paintings that Sotheby's selected for auctioning.

32. MARIDROSIAN further agreed to pay Palandjian a commission, based on the sales prices of the stolen Paintings.

33. In or about February 2005, MARDIROSIAN – through Palandjian – agreed to sell four of the stolen Paintings at Sotheby's auction facility in London, England.

34. In or about February 2005, MARDIROSIAN authorized Palandjian to make the necessary arrangements to transfer four of the stolen Paintings from Geneva, Switzerland, to Sotheby's auction facility in London, England.

35. In or about February through June 2005, MARDIROSIAN, through Palandjian, made arrangements with Sotheby's to place the four stolen Paintings for sale at Sotheby's June 2005 auction in London, England. The estimated market value of the paintings ranged from approximately $70,000 to $500,000 per painting.

36. On or about April 11, 2005, acting as MARDIROSIAN's agent, Palandjian arranged for Sotheby's to take delivery of the four stolen Paintings at the bank in Geneva, Switzerland, for shipment to Sotheby's auction facility in London, England.

37. On or about April 20, 2005, the four stolen Paintings were transported to London, England.

38. In or about May 2005, with the assistance of the ALR, Bakwin sued Sotheby's to halt the sale of the four stolen Paintings.

39. In or about June 2005, acting as MARDIROSIAN's agent, Palandjian retrieved the two paintings remaining at the bank in Geneva, Switzerland, and delivered them to Henri Klein in Geneva.

## COUNT ONE
(Possession, Concealment or Storage of Stolen Goods – 18 U.S.C. § 2315)

40. The Grand Jury re-alleges and incorporates paragraphs 1 through 39 of this Indictment as if fully set forth herein.

41. Beginning some time after 1978, the exact date being unknown to the Grand Jury and continuing until on or about April 11, 2005, in the District of Massachusetts, and elsewhere,

ROBERT M. MARDIROSIAN,

the defendant herein, did possess, conceal, and store, goods, wares and merchandise of a value of $5,000 or more, which had crossed a State and United States boundary after having been stolen, knowing the same to have been stolen; to wit, by possessing, storing, and concealing six paintings he knew to have been stolen in the United States and removed to Geneva, Switzerland and elsewhere, namely *Portrait d'une Jeune Fille* and *Portrait d'un Jeune Homme* by Chaim Soutine; *Maison Rouge* by Maurice Utrillo; *Flowers* by Maurice de Vlaminck; and *Woman Seated* and *Boy* by Jean Jansem.

All in violation of Title 18, United States Code, Sections 2315 and 2.

## COUNT TWO
(Transportation of Stolen Property – 18 U.S.C. § 2314)

42.     The Grand Jury re-alleges and incorporates paragraphs 1 through 39 of this Indictment as if fully set forth herein.

43.     In or about April 2005, in the District of Massachusetts and elsewhere,

### ROBERT M. MARDIROSIAN,

the defendant herein, did transport and transfer in foreign commerce, goods, wares and merchandise of a value of $5,000 or more, knowing the same to have been stolen; to wit, he did cause four paintings he knew to have been stolen, namely *Portrait d'une Jeune Fille* and *Portrait d'un Jeune Homme* by Chaim Soutine; *Maison Rouge* by Maurice Utrillo; and *Flowers* by Maurice de Vlaminck; to be transported from Geneva, Switzerland, to London, England.

All in violation of Title 18, United States Code, Sections 2314 and 2.

## FORFEITURE ALLEGATIONS
(18 U.S.C. § 981 and 28 U.S.C. § 2461)

THE GRAND JURY FURTHER CHARGES THAT:

44. Upon conviction of the offenses in violation of Title 18, United States Code, Section 2314 or Section 2315, the defendant,

ROBERT M. MARDIROSIAN,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, which constitutes, or is derived from, proceeds traceable to such violation, including the following paintings: *Portrait d'une Jeune Fille* and *Portrait d'un Jeune Homme* by Chaim Soutine; *Maison Rouge* by Maurice Utrillo; *Flowers* by Maurice de Vlaminck; and *Woman Seated* and *Boy* by Jean Jansem.

45. If any of the property described in paragraph 44 hereof as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(2)(A), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred to, sold to, or deposited with a third party;

    c. has been placed beyond the jurisdiction of this Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of all other property

of the defendant up to the value of the property described in subparagraphs a through e of this paragraph.

All pursuant to Title 18, United States Code, Section 981 and Title 28, United States Code, 2461.

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
Jonathan F. Mitchell
Assistant United States Attorney

Date:

District of Massachusetts, March 8, 2007 at

Returned to the District Court by the Grand Jurors and filed.

_____
Deputy Clerk